GRAHAM v. PLANTERS' COMPRESS CO.

(District Court, S. D. New York.   April 14, 1904.)

**1. SHIPPING—DEMURRAGE—LIABILITY OF CONSIGNEE.**

Where a consignee is interested in the cargo, and accepts it under a charter party made between the vessel and the consignor which provides for demurrage, he is liable therefor in case of his default.

**2. SAME—BILLS OF LADING.**

Where a part of the freight had been paid by the consignor, and the consignee was required by the charter party to pay the balance, a provision in the bill of lading requiring the consignee to pay freight at the rate agreed on, in accordance with the terms of the charter party, referred to freight alone, and did not obligate the consignee to pay demurrage.

**3. SAME—FAILURE TO ACCEPT CARGO.**

Where, though a consignee was not liable for demurrage under the bill of lading or charter party, he improperly refused to take part of the cargo within a reasonable time after arrival, he thereby became liable for damages arising from the delay.

Martin A. Ryan, for libellant.

Simpson, Thacher, Barnum & Bartlett and Graham Sumner, for respondent.

ADAMS, District Judge.   This action was brought by Stephen Graham, as owner of the boat Six Brothers, against the Planters' Compress Company, to recover a claim for freight, with demurrage and other charges, on a quantity of hay transported from Montreal to New York in August, 1903.   The freight, amounting to $185, was admittedly due and an offer was made to pay it, with custom house charges, but refused and the action was instituted to recover $318.60, which included the custom house charges mentioned, amounting to $4.70, towing charges in New York Harbor, amounting to $4, demurrage for 32 days at $4 each, amounting to $128, and wharfage charges in New York for 31 days, amounting to $8.90.   An offer was made on the 22nd of January, 1904, to allow judgment for $150 and costs to date.

The dispute arises out of the condition of 51 bales of damaged hay and the responsibility therefor, the contention of the libellant being that it was the duty of the shipper to furnish proper covering for the cargo to protect it from the weather while en route and the damage occurred because it did not do so.   The respondent claims that the damage arose through a leaky condition of the boat and that the libellant should be held responsible for it, which would require a dismissal of the libel, in view of the offer to pay.

The testimony is to the effect that the damage was principally away from the side of the boat, where some slight leaks existed.   My im-

¶ 1. Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.

See Shipping, vol. 44, Cent. Dig. § 571.

pression formed on the trial, that in all probability the damage was caused through defective coverings, has not been disturbed but rather confirmed by a perusal of the testimony, in connection with a consideration of the improbability of leaks, located as these were, damaging the cargo. The libellant's claim should, therefore, be sustained, but the respondent insists that if such conclusion is reached, the respondent being merely a consignee is not liable, and in any event is entitled to $25 for the detention of 4 Canadian tarpaulins, which the libellant received in Montreal and failed to deliver promptly in New York.

The question of when and how far a consignee is liable for demurrage depends upon the particular facts in each case. A mere consignee, who is not interested in the goods carried, is not liable for demurrage—Merritt & Chapman Derrick & Wrecking Company v. Vogeman (D. C.) 127 Fed. 770—But where the consignee is interested in the cargo and accepts it under a charter party made between the vessel and the consignor, which provides for demurrage, he becomes liable in case of his default. Sutton v. Housatonic R. Co. (D. C.) 45 Fed. 507.

In this case a shipment of 5000 half bales of hay was ordered from the respondent by Thebaud Bros. of New York. The respondent obtained the hay at Montreal from the Canadian Baling Company, Ltd. and it was forwarded under a charter, of which the following is a copy:

"Charter Party.

Concluded at Montreal this 30th day of July 1903
Between

The Canadian Baling Co. Ltd Merchant of Montreal
and

Stephen Graham Captain of boat Six Brothers

It Is This Day Mutually Agreed:

1. That said boat Six Brothers being tight, staunch, and in every way fitted to carry hay, shall be at the port of Montreal Quebec on the St. Lawrence River, on the day of July 31st 1903, ready to receive a cargo of pressed hay, not to exceed what can pass under all bridges safely, and when loaded shall proceed with all reasonable speed for New York, and there deliver said cargo as ordered by Planters Compress Co. at the port of New York.

2. Boat to give, free of charge, eight full working days to load & unload said cargo, Sundays and Holidays excepted, after which demurrage shall be paid by shipper at the rate of $4.00 per day. ~~It is understood that this demurrage is payable at point of shipment and cannot be collected from consignee.~~

3. Cargo to be loaded at the expense of The Canadian Baling Co. Ltd Merchant.

4. Boat to pay all canal tolls and towages to New York and one towage in New York Harbor within lighterage limits.

5. Freight to be paid at the rate of Three hundred and ten dollars for the full cargo.

6. Captain to receive, as an advance, when the cargo is loaded, the sum of One hundred & twenty five dollars.

Balance of freight to be paid by consignee, free of commission, on right delivery of cargo at New York.

7. The Company to unload said cargo at New York.

8. The boat to allow eight full days for discharging & loading, Sundays and Holidays excepted, after which demurrage shall be paid at the rate of $4.00 per day; lay days commencing immediately after Captain enters his boat at the Custom-house, New York City, and reports to the consignee.

9. The Merchant agree to furnish sufficient tarpaulins to cover the hay on deck.

10. Captain to deliver tarpaulins at point of discharging to the consignee.

Canadian Baling Company Ltd.

per Wm J S Burns,

Merchant.

Witness:

    E. Brisebois.

    (Endorsed)

Stephen Graham

Captain."

          "Captain to report to

                    Planters Compress Co

                      675 West 33rd St.

                         New York.

Pier 15

    Prentice Stores

        Brooklyn."

The bill of lading was as follows:

"Shipped in good order and condition by Canadian Baling Co Ltd on board the boat Six Brothers Whereof Stephen Graham is master, now lying at the port of Montreal

| No. of Bales. | | Weight in Pounds |
|---|---|---|
| 2686 | Hay | 259630 |
| | For Export to Yucatan | lbs. |

to be delivered in like good order and condition at the port of New York (the act of God, fire and every danger and accident of the seas, rivers, canals and navigation, of whatsoever kind excepted), Consigned to Planters Compress Co he or they paying freight at the rate of as agreed, in accordance with the terms of the charter party.

In Witness Whereof the master of said boat hath signed 3 Bills of Lading, all of this tenor and date, one of which being accomplished, the other to stand void.

Dated at Montreal, this 1st day of August 1903

Stephen Graham, Master."

(On margin)

          "Notify Planters Compress Co

               675 West 33rd St

                  New York

          Planters Compress Co

                  New York

               2686 Bales hay

               259630 lbs

           4 Canadian

                Tarpaulins

                to be retd

          Captain paid       $4 70/00

          Customs Charges on Cargo

            F. W. Myers & Co.

               Freight advanced

                   $125 00/00

                Captains copy"

(Endorsed)

     "Captain to report to

          Planters Compress Co

               675 West 33rd St

                  New York."

When the boat reached New York, the cargo was taken charge of by the respondent, which proceeded to unload it. As above appears, some of the cargo was damaged, without fault on the part of the boat, and the testimony of the libellant shows that he was ordered back to piers 4 and 5, where he had been lying before going to Staten Island to discharge, under a promise from the respondent that the balance of the hay and the covers would be taken off. But the hay was not removed and the boat was detained with the covers until the 21st of September, when they were taken possession of by the respondent and the libellant was informed that the hay was his. On the 23rd of September, he sold it for $15, and gives the respondent credit for that amount. During the period he was detained, the wharfage mentioned accrued.

Bills of lading requiring the consignee to pay the freight, only hold him liable for such provision alone. Burrill v. Crossman (D. C.) 65 Fed. 104; Id., 69 Fed. 747, 750, 16 C. C. A. 318; Crossman v. Burrill, 179 U. S. 100, 109, 21 Sup. Ct. 38, 45 L. Ed. 106. Here, $125 of the freight were paid by the consignor and the consignee was by the charter required to pay the balance. The provision in the bill of lading: "in accordance with the terms of the charter party" evidently referred to the freight alone. I must hold, therefore, that there was no liability on the part of the consignee as such, under the charter party.

If the consignee had been entitled to reject the damaged hay, there would be no liability on its part, but as it improperly refused to take part of the cargo, the case seems in this respect, to fall under the principle that where a consignee fails to take the cargo within a reasonable time after arrival, he remains liable for the damages arising from undue delay, according to the ordinary rules of law, which govern in the absence of a specific agreement. Crossman v. Burrill, supra.

I conclude that the consignee should be held for the delay incident to the refusal, including the wharfage necessarily incurred during such period, less $15, and unless the parties can agree upon the amount of damages, there will have to be a reference to ascertain them.

Decree for the libellant, with an order of reference.